UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETE KASICH, and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>THE SCOTTS MIRACLE-GRO COMPANY, INC., and THE SCOTTS COMPANY LLC,<br><br>        Defendants. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Civil Case No. _____ |

Plaintiff PETE KASICH, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by their attorneys, make the following assertions pursuant to the investigations of counsel and upon information and belief, except as to the assertions specifically pertaining to themselves and their counsel, which are based on personal knowledge:

**NATURE OF THE ACTION**

1. This is a class action against The Scotts Miracle-Gro Company, Inc. and The Scotts Company LLC (collectively, "Scotts" or "Defendants") for misrepresenting and selling a defective combination mulch-grass seed product, Scotts Turf Builder EZ Seed ("EZ Seed" or the "Product").

2. The Product contains a pre-mixed formulation of ingredients, including mulch, grass seed, and fertilizer. During the class period, according to the Product labeling and advertising, the Product was uniformly represented as causing grass to grow "50% THICKER

WITH HALF THE WATER" compared to "ordinary seed" and that the Product "Grows Anywhere! Guaranteed!" (the "Representations"). These Representations are materially false and misleading. The Product does not in fact make grass grow "50% THICKER WITH HALF THE WATER" compared to "ordinary seed". Instead, the mulch competes with the germinating seed for available moisture and actually prevents the grass from growing. Thus, the Product actually requires more water than ordinary seed, not less. In addition, the Product does not "grow anywhere".

3. Defendants began selling the Product in or about January 2009. The Product was sold in a variety of package sizes, and with varying seed mixtures.[1]

4. During the class period, EZ Seed is or was labeled and sold as a premium product that is supposed to be better than "ordinary seed," and it commands and commanded a substantial price premium over other grass seed products.

5. Moreover, EZ Seed covered only a fraction of the surface area of ordinary grass seed products. For example, a ten pound bag of EZ Seed retailed for $28.94 and covered 210 square feet. In contrast, a seven pound bag of Scotts Grass Seed: Sun & Shade Mix costs $24.98 but covers up to 2,800 square feet. To achieve the same coverage area with EZ Seed would require a consumer to purchase thirteen ten pound bags at a premium of $351.24 over the cost of Scotts Grass Seed: Sun & Shade Mix.

6. Had Plaintiff and Class members known the truth about Defendants' materially false Representations, they would not have purchase the Product, or would have purchased it on different terms.

---

[1] EZ Seed is or was sold in varieties including "Dog Spot Repair," "Dog Spot Repair for Tall Fescue Lawns," "Ultimate Winter Lawn Mix," "for Tall Fescue Lawns," and "for Bermudagrass Lawns." Each of these varieties is included in the definition of "Product."

7. Through this lawsuit, Plaintiff seeks to recover on behalf of himself and all other similarly situated purchasers of EZ Seed in Pennsylvania.

## THE PARTIES

8. Plaintiff Pete Kasich is a citizen of Pennsylvania, residing in Allegheny County, Pennsylvania.

9. Defendant The Scotts Miracle-Gro Company, Inc. ("Scotts Miracle-Gro Co.") is a Delaware corporation with a principal place of business at 14111 Scottslawn Road, Marysville, Ohio, 43041. Scotts is the world's largest marketer of branded consumer lawn and garden products, including a variety of grass seed products.

10. Defendant The Scotts Company LLC ("Scotts, LLC") is an Ohio Limited Liability Company with a principal place of business located at 14111 Scottslawn Road, Marysville, Ohio, 43041. The Scotts Company LLC is a wholly-owned subsidiary of Scotts Miracle-Gro Company, Inc.

11. At all relevant times hereto, Defendants acted in concert with, and with the knowledge and approval of and/or as the agent of each other, and within the course and scope of the agency, regarding the Representations, acts and omissions alleged.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

13. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of

a state different from Defendants.

14. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within Pennsylvania, such that Defendants have significant, continuous and pervasive contacts with the State of Pennsylvania.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this district, and a substantial part of the events giving rise to Plaintiff Kasich's claims took place within this judicial district, including his purchase and use of EZ Seed.

## FACTS COMMON TO ALL COUNTS

### *Scotts EZ Seed*

16. Defendants claim that EZ Seed is a turf building mixture of grass seed, mulch and fertilizer. Scotts began selling EZ Seed in or about 2009, which it describes or described as a "[r]evolutionary seeding product[] [that] contain[s] a super absorbent growing material that absorbs water and expands to surround seed in a moist, protective layer. The mix then cares for seeds, infusing them with water and nourishment, so they can build strong roots that survive tough conditions – making it easy for you to grow grass, guaranteed!"

17. Defendants' Product packaging uniformly states or stated that the Product will make grass grow "50% THICKER WITH HALF THE WATER" compared to "ordinary seed"

18. In addition, Defendants make or made false statements about EZ Seed's ability to grow grass anywhere, including that the Product "Grows Anywhere! Guaranteed!"

### *NexGen's Half Water Study Regarding EZ Seed Product Claims*

19. NexGen is the largest turfgrass development institution in North America. It develops cool and warm season cultivars for certification and licensing to turfgrass companies,

including Scotts.

20. NexGen studied the characteristics and efficacy of EZ Seed versus ordinary grass seed and a competing brand of seed mulch products.

21. NextGen's study relates to the Product representation that EZ Seed is "WaterSmart" and produces grass "50% thicker with half the water [versus ordinary grass seed when each is watered at half the recommended rate.]"

22. The study was administered by Kenneth Hignight, NexGen's Director of Research. Mr. Hignight holds three patents for turfgrass development, has released over 100 cultivars, has over 25 Plant Variety Protection certificates, has authored or co-authored 22 articles, and has served on the National Grass Variety Review Board for over 10 years.

23. Specifically, NexGen examined the ability of EZ Seed to establish grass growth with half the recommended water for ordinary seed. The study, *Validation of the 1 Step Complaint Claim, 50% Thicker with Half the Water than Ordinary Seed"* (the "Half Water Study"), included a comparison of EZ Seed to ordinary grass seed at half water levels.

24. Four simultaneous trials were conducted at a NexGen facility in Albany, Oregon. Each trial was replicated three times. Trial 1 used a sandy loam soil and compared EZ Seed to three types of Sun and Shade mixtures of ordinary grass seed, two made by Vigoro and one made by Scotts. Trial 2 used a Woodburn silt loam soil and compared EZ Seed to the same three types of ordinary grass seed used in Trial 1. Trial 3 used a sandy loam soil and compared EZ Seed to three types of Tall Fescue Blends of ordinary grass seed, two made by Vigoro and one made by Scotts. Trial 4 used Woodburn silt loam soil and compared EZ Seed to the same three types of ordinary grass seed used in Trial 3.

25. The seed samples that received full water received an average of 1.60 inches per

week, and the half water samples received an average of 0.80 inches per week.

26. In all four trials, EZ Seed failed to produce any seedlings under half water conditions throughout the 32-day testing period. Every other seed sample, including the ordinary seed, produced seedlings under half water conditions.

27. Regarding EZ Seed, the Half Water Study found "The seed mulch product EZ Seed had no seedlings emerge by day 7 when watered at half the recommended rate for 'ordinary' seed. ... Full water rates for EZ Seed resulted in stands comparable to 'ordinary' seed and [the competing branded product at] half rate of water. ... These results are consistent with earlier research where EZ Seed required increased amounts of water to promote germination and establishment compared to [a competing product]."

28. The Half Water Study further found, "By day 10 of the study most products in the four trials had established at a sufficient level to produce a turfgrass stand. The exception was EZ Seed with half the water rate, which showed no emerging seedlings." The Study offered the following explanation: "porous" seed mulch products that "have a high moisture absorbing capacity" like EZ Seed actually impair grass growth because the mulch "compete[s] with the seeds for available water."

29. The Half Water Study concluded that "sufficient water was applied throughout the study to establish and maintain the 'ordinary' products and the [competing branded product]. Therefore, EZ Seed should be able to produce a thick stand of plants as illustrated on the label with half the amount of water. Our results showed that EZ Seed could not establish under the half water rate conditions described in this study."

### *False And Misleading Product Claims About EZ Seed*

**A. <u>EZ Seed's False and Misleading Label</u>**

30.     EZ Seed's packaging label claims or claimed it is "WaterSmart" and "Makes The Most Of Every Drop." EZ Seed's packaging label uniformly claims or claimed it establishes grass "50% thicker with half the water" compared to ordinary grass seed. According to the label, this claim was based on a 32-day comparison study between EZ Seed and "ordinary seed," with "each watered at half the recommended rate for ordinary seed." Each of these material representations is false and misleading.

31.     EZ Seed's packaging label also claims or claimed that the Product "Grows Anywhere! Guaranteed!" and "Grows In Tough Conditions! Guaranteed!" The label also states or stated that EZ Seed is "[t]he revolutionary seeding mix that takes care of the seed for you, so you can grow thick, beautiful grass ANYWHERE!", including "Dry, sunny areas!"; "Dense shade!"; and "Even grows on pavement!" Moreover, the product label claims or claimed, "Scotts premium quality EZ Seed is developed to thrive in virtually every condition -- harsh sun, dense shade, and even spreads to repair wear and tear. ***The result -- thicker, beautiful, long lasting grass!***" Each of these representations is materially false and misleading.

32.     EZ Seed's package label also included a false and misleading graphic comparing EZ Seed grass growth to ordinary grass seed growth after 32 days (the "Comparative Packaging Graphic"). The EZ Seed clearly outperforms the ordinary grass seed in the promotional visual on the product packaging, depicted below.



33. The Comparative Packaging Graphic is materially false and misleading. In NexGen's Half Water Study, there was no seedling emergence after 32 days when EZ Seed was watered with half the recommended water for ordinary grass seed. Thus, scientific testing demonstrates that EZ Seed does not produce 50% thicker grass growth with half the water; it is not "WaterSmart;" and it is not "developed to thrive in virtually every condition" or to "grow anywhere."

34. Defendants' materially false and misleading Representations were made in willful and wanton disregard of the interests of the consuming public, and constitute a knowing attempt to deceive consumers.

B. **False and Misleading "No-Quibble Guarantee"**

35. To bolster the sale of EZ Seed, Defendants advertised and promoted a money-back "No Quibble Guarantee" which they failed to honor.

36. On packages of EZ Seed, Scotts highlighted what it refered to as their "No Quibble Guarantee®." The terms of the guarantee were unequivocally stated on the product packaging:

> If for any reason you, the consumer, are not satisfied after using this product, you are entitled to get your money back. Simply send us the original evidence of purchase and we will mail you a refund check promptly.

37. Scotts, however, refused to honor their own return policy, rendering their money-back guarantee illusory.

## FACTS CONCERNING THE CLASS REPRESENTATIVE

### *Pete Kasich's EZ Seed Purchase And Use*

38. Plaintiff Kasich purchased one 10 lb. bag of EZ Seed from a Home Depot store in West Mifflin, Pennsylvania, as well as a 10 lb. bag of EZ Seed from a Lowe's in Munhall, Pennsylvania during the class period in order to seed an area of his lawn. He purchased the products for approximately $30.00 each.

39. Plaintiff Kasich purchased EZ Seed in reliance Defendants' false and misleading Representations and omissions. Specifically, he chose to purchase EZ Seed instead of a less expensive grass seed because EZ Seed was "GUARANTEED!" to grow anywhere, including in densely shaded areas. In addition, Plaintiff Kasich purchased EZ Seed because the label promised that the "revolutionary" seeding mix was "WaterSmart" and that the mixture would grow grass 50% thicker than ordinary grass seed when each was watered at half the recommended rate. These representations were false and misleading and the Product failed to perform as stated.

40. Plaintiff Kasich paid a tangible increased cost for EZ Seed because of the false claims that he read on the product packaging, on which he also relied. Ultimately, EZ Seed was worthless and/or worth less than the Representations suggested, and Plaintiff Kasich would not have purchased EZ Seed if he had known that the claims on the label were false, would have

purchased it on different terms, or would have purchased a different and/or less expensive grass seed.

41. Plaintiff Kasich seeded his lawn with fresh EZ Seed product, and he carefully followed EZ Seed's directions for use and care on the product package. However, the EZ Seed did not perform as advertised. did not grow at all.

## CLASS REPRESENTATION ASSERTIONS

42. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself, on behalf of all others similarly situated, and as a member the Class defined as follows: All citizens of Pennsylvania who, within six years prior to the filing of the initial Complaint, purchased Defendant's Products.

43. Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

44. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

45. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

46. **Numerosity**: Members of the Class are so numerous that joinder of all members

is impracticable. Upon information and belief, the Class consists of thousands of purchasers or more throughout the Pennsylvania. Accordingly, it would be impracticable to join all members of the Class before the Court.

47. **Common Questions Predominate**: There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether, contrary to Defendant's uniform, material representations and omissions, the Products do not make gross grow "50% THICKER WITH HALF THE WATER" compared to ordinary seed;
- Whether, contrary to Defendant's uniform, material representations and omissions, the Products do not cause grass to "Grow[] Anywhere! Guaranteed!";
- Whether Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*;
- Whether Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq.*;
- Whether Defendant committed a Breach of Express Warranty;
- Whether Defendant committed a breach of Implied Warranty of Merchantability;
- Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;
- Whether Plaintiffs and the Class members have sustained damage as a result of Defendant's unlawful conduct; and
- The proper measure of damages sustained by Plaintiffs and Class Members.

48. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class

he seeks to represent because Plaintiff, like the Class members, purchased Defendants' misbranded Products.  Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct.  Plaintiff's and Class Member's claims arise from the same practices and course of conduct and are based on the same legal theories.

49. **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent.  Plaintiff will fairly and adequately protect the interests of members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

50. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a. The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

   b. Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

   c. Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent members have no substantial interest in

individually controlling the prosecution of individual actions;

d. When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendants.

51. Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

52. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

53. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

54. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## FEDERAL COUNTS

### COUNT 1

**Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301,** *et seq***.**

55. Plaintiffs repeat the assertions in the foregoing paragraphs as if fully set forth herein.

56. Plaintiff brings this Count I individually and on behalf of the members of the Class against all Defendants.

57. EZ Seed is a consumer product as defined in 15 U.S.C. § 2301(1).

58. Plaintiff is a consumer as defined in 15 U.S.C. § 2301(3).

59. Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

60. In connection with the sale of EZ Seed, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6) on the product packaging and in various advertisements and promotional materials by making Express Warranties that EZ Seed: (i) "Grows Anywhere! GUARANTEED!"; (ii) "Grows in Tough Conditions! Guaranteed!;" (iii) is "WaterSmart;" (iv) produces "50% thicker [grass] with half the water [versus ordinary seed];" (v) is a "revolutionary seeding mix that takes care of the seed for you, so you can grow thick, beautiful grass ANYWHERE!", including "Dry, sunny areas!"; "Dense shade!"; and "Even grows on pavement!"; (vi) is a "premium quality" seeding product that "is developed to thrive in virtually every condition -- harsh sun, dense shade, and even spreads to repair wear and tear. *The result - thicker, beautiful, long lasting grass!*" Moreover, Defendants issued an express written warranty that they would honor the "No-Quibble Guarantee" (collectively, the "Express Warranties" or "Misrepresentations").

61. In fact, EZ Seed does not conform to the Express Warranties because each of the

Express Warranties is false and misleading. Additionally, NexGen's studies refute some of these warranties. For example, EZ Seed warrants that it will produce 50% thicker grass growth compared to ordinary grass seed when watered at half the recommended rate, but NexGen's Half Water Study found that EZ Seed failed to produce any grass seedlings when watered at half the recommended rate for ordinary seed.

62. By reason of Defendants' breach of warranties, Defendants violated the statutory rights due to Plaintiffs pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiff and members of the Class.

63. Plaintiff and the Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased EZ Seed if they knew the truth about the product, or would have purchased the Product on different terms.

## PENNSYLVAIA STATE LAW COUNTS

## COUNT II

**(Unfair Trade Practices and Consumer Protection Law ("UTPCPL"),
73 P.S. §§ 201-1, *et seq.*)**

64. Plaintiffs repeat the assertions in the foregoing paragraphs as if fully set forth herein.

65. 73 P.S. § 201-2(4)(v) prohibits "[r]representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have." Defendants violated this provision by making the Representations described herein.

66. 73 P.S. § 201-2(4)(vii) prohibits "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." Defendants violated this provision by making the Representations described herein.

67. 73 P.S. § 201-2(4)(ix) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Defendants violated this provision by making the Representations described herein.

68. 73 P.S. § 201-2(4)(xiv) prohibits "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made." Defendants violated this provision by making the Representations described herein.

69. 73 P.S. § 201-2(4)(xxi) prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Defendants violated this provision by making the Representations described herein.

70. Plaintiff and Class members suffered injuries caused by Defendants' false and misleading Representations because they would not have purchased the Products if they knew the truth, or would have purchased them on different terms.

71. Wherefore, Plaintiffs hereby seek all remedies available under the UTPCPL from Defendants including, but not limited to, three times the actual damages sustained, costs, and reasonable attorney fees.

## COUNT III

### (Breach of Express Warranty, 13 Pa.C.S. §§ 2301, et seq.)

72. Plaintiffs repeat the assertions in the foregoing paragraphs as if fully set forth herein.

73. 13 Pa.C.S. § 2313(1) provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 13 Pa.C.S.

§ 2313(2) provides that "[a]ny description of goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

74. By making the Representations, Defendants, as the designers, manufacturers, marketers, distributors, or sellers expressly warranted that the Products were fit for their represented purpose.

75. In fact, the Products are not fit for such purpose because each of the Representations is false and misleading.

76. Plaintiff and the Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased EZ Seed if they knew the truth about the product, or would have purchased them on different terms.

### COUNT IV

**(Breach of Implied Warranty of Merchantability, 13 Pa.C.S. §§ 2301, et seq.)**

77. Plaintiffs repeat the assertions in the foregoing paragraphs as if fully set forth herein.

78. 13 Pa.C.S. § 2314(a) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 13 Pa.C.S. § 2314(b)(1) provides that goods to be merchantable must at least "pass without objection in the trade under the contract description." 13 Pa.C.S. § 2314(b)(2) provides that goods to be merchantable must be at least such as "in the case of fungible goods, are of fair average quality within the description." 13 Pa.C.S. § 2314(b)(3) provides that goods to be merchantable must at least be "fit for the ordinary purposes for which such goods are used." 13 Pa.C.S. § 2314(b)(6) provides that goods to be merchantable must at least "conform to the promises or affirmations of fact made on the container or label if any."

79. Defendants as the designers, manufacturers, marketers, distributors, and/or sellers impliedly warranted that EZ Seed was fit for the represented purposes, based on the express, material Representations.

80. Defendants breached the warranty implied in the contract for the sale of the Products in that the Products could not pass without objection in the trade under the contract description; the goods were not of fair average quality within the description; the goods were unfit for their intended and ordinary purpose; and the goods did not conform to the promises of fact made on the label. As a result, Plaintiffs did not receive the goods as impliedly warranted by Defendants to be merchantable.

81. In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs purchased the Products.

82. The EZ Seed products were not altered by Plaintiffs.

83. The EZ Seed products were defective and misrepresented when they left the exclusive control of Defendants.

84. Defendants knew that the EZ Seed products would be purchased and used without additional testing for efficacy by Plaintiffs.

85. The EZ Seed products were defectively designed and unfit for their intended purpose, and Plaintiffs did not receive the goods as warranted.

86. As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs have been injured and harmed because they would not have purchased the Products if they knew the truth about the Products, or would have purchased them on different terms.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendants, as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class members;

B.     For an order declaring the Defendants' conduct violates the statutes and laws referenced herein;

C.     For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiffs and the Class for all causes of action;

D.     For an order requiring Defendants to immediately cease and desist from selling their misbranded Products in violation of law; enjoining Defendants from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

E.     For prejudgment and postjudgment interest on all amounts awarded;

F.     For an order awarding punitive damages; and

G.     For an order awarding attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

/s/ *Benjamin J. Sweet*
Benjamin J. Sweet
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
bsweet@carlsonlynch.com
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246

AND

SCOTT A. KAMBER
(*to be admitted pro hac vice*)
**KAMBERLAW, LLC**
skamber@kamberlaw.com
201 Milwaukee Street, Ste. 200
Denver, CO 80206
Telephone: (303) 222-9008
Facsimile: (212) 202-6364

*PRO HAC VICE TO BE SUBMITTED*